UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **HAYWARD INDUSTRIES, INC.,** | Civil Action No. 22-7330 (KM) (MAH) |
| **Plaintiff,** |  |
| v. | OPINION |
| **COMPUPOOL PRODUCTS, et al.,** |  |
| **Defendants.** |  |

I.      INTRODUCTION

This matter comes before the Court by way of Plaintiff Hayward Industries, Inc.'s ("Plaintiff") motion for alternative service. Mot. for Alt. Serv., March 17, 2023, D.E. 7. The Court has reviewed Plaintiff's submissions and, pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1, decides the motion without oral argument. For the reasons set forth below, the Court will deny Plaintiff's motion.

II.      BACKGROUND

On December 16, 2022, Plaintiff, a leading manufacturer of pool equipment, filed a Complaint, asserting twenty-three claims for, among other things, breach of contract; breach of a consent judgment entered in a prior action; trademark infringement, unfair competition, importation, and false designation of origin, in violation of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, copyright infringement under 17 U.S.C. §101 *et seq.*, as well as claims for violations of New Jersey state and common law. Compl., D.E. 1, ¶¶ 157-368. Defendants include both domestic and foreign parties. The domestic defendants include CompuPool Products USA, Inc ("CompuPool USA"); Saltwater Pool Supplies *d/b/a* Salt Pool Store *d/b/a* Saltpoolstore.com, Salt Pro Systems LLC *d/b/a* Salt Pro Systems *d/b/a* Salt Pro Systems Direct *d/b/a*

Saltprodirect.com (collectively, "SPS Defendants"). The foreign defendants are CompuPool Products ("CompuPool Australia"), Tiffany Holdings Pty Ltd ("Tiffany Holdings"), and Nick Millar *a/k/a* Nick Miller (collectively, "Foreign Defendants").[1] Plaintiff maintains that Nick Millar is the owner/operator of all Defendants and that he controls all Defendants from Australia. Compl., D.E. 1, ¶ 16. Defendants own and operate retail websites and use other e-commerce websites to sell pool equipment, specifically salt cells, that allegedly infringe on Plaintiff's intellectual property rights. Compl., D.E. 1, ¶¶ 10, 24.

To date, Plaintiff has only successfully served the Summons and Complaint on CompuPool USA.[2] Plaintiff has purportedly attempted to serve the SPS Defendants in accordance with Federal Rule of Civil Procedure 4 but notably, Plaintiff has not attempted service on any of the Foreign Defendants. Because Plaintiff's attempts at service on the SPS Defendants have heretofore been unsuccessful, Plaintiff contends that the unserved Defendants are trying to avoid service and have even changed their addresses and tradenames to avoid detection. Mem. in Supp., D.E. 7-1, at 2. Accordingly, Plaintiff filed the instant motion for

---

[1] Twice previously, Plaintiff has sued certain of these Defendants for various violations of the Lanham Act. *See Hayward Industries, Inc. v. CompuPool Products et al.*, Civil Action No. 15-4213 (SRC) ("the Underlying CompuPool Action") and *Hayward Industries, Inc. v. Saltwater Pool Supplies et al.*, Civil Action No. 20-6105 (KM) ("the Underlying Salt Pool Store Action"). Both actions ended in the Court entering permanent injunctions prohibiting Defendants or anyone acting in concert with them from infringing Hayward's trademarks related to salt cells. The Underlying CompuPool Action, D.E. 8; the Underlying Salt Pool Store Action, D.E. 15. Hayward brings this third action against these Defendants, as well as Nick Millar and Tiffany Holdings, asserting that Defendants continue to infringe their products and violate the terms of the permanent injunctions. Compl., D.E. 1, at ¶¶ 78-368.

[2] Plaintiff served CompuPool USA on December 28, 2022 at its previous place of business, 126 Semoran Commerce Place, Apopka, FL 32703. Summons Returned Executed, D.E. 6. Betsy Lawrence accepted service as CompuPool USA's authorized representative. *Id.* Its answer was due on January 18, 2023, but it failed to file an answer, move or otherwise reply. Thus, the Clerk of the Court entered default as to CompuPool USA on March 20, 2023. *See* Unnumbered D.E. Dated March 20, 2023 (entering default).

2

alternative service, seeking leave to serve all unserved Defendants via email. Specifically, Plaintiff seeks leave to serve the SPS Defendants at: sales@saltpoolstore.com, nick@compupool.com.au, and hello@thepoolfolks.com. *Id.* at 17. Plaintiff also seeks to serve the Foreign Defendants via: nick@compupool.com.au and sales@compupool.com.au. *Id.* at 12, 20. The Court shall describe Plaintiff's efforts to serve each of the unserved Defendants below when analyzing whether alternative service should be permitted.

### III.  LEGAL STANDARD AND ANALYSIS

Plaintiff argues that it should be permitted to serve the SPS Defendants via email because despite numerous attempts to serve them at their last four known addresses, all of its attempts to serve have been unsuccessful. Mem in Supp., D.E. 7-1, at 14-17. Plaintiff also contends that it should be permitted to serve the Foreign Defendants via email because service through Hague Convention could delay the instant litigation. *Id.* at 17-23. The Court will take each argument in turn.

#### a.  Service on the Salt Pool Store Defendants in the United States

Federal Rule of Civil Procedure 4(e) states:

> Unless federal law provides otherwise, an individual – other than a minor, an incompetent person, or a person whose waiver has been filed – may be served in a judicial district of the United States by:
>
> (1) following state law for serving summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
>   (A) delivering a copy of the summons and of the complaint to the individual personally;
>
>   (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

3

>  (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Pursuant to New Jersey law, personal service is the primary and preferred method to serve an individual defendant located within the state. N.J. Ct. R. 4:4-4(a). However, when personal service cannot be effectuated in accordance with N.J. Ct. R. 4:4-4(a), New Jersey law allows for substitute service so long as the proposed form of service is "provided by court order, consistent with due process of law." *See* N.J. Ct. R. 4:4-4(b)(3).

Before seeking a court order pursuant to Rule 4:4-4(b)(3), an "affidavit of diligent inquiry is required to disclose the efforts made to ascertain the defendant's whereabouts." *Modan v. Modan*, 327 N.J. Super. 44, 47 (App. Div. 2000). The diligence exercised and the alternative service requested must meet the constitutional requirements of due process. *Cf. O'Connor v. Abraham Altus*, 67 N.J. 106, 126–127 (1975). "There is no objective formulaic standard for determining what is, or is not, due diligence. Instead . . . due diligence is measured by the qualitative efforts of a specific plaintiff seeking to locate and serve a specific defendant." *Modan*, 327 N.J. Super. at 48 (internal citation and quotations omitted); *see also J.C. v. M.C.*, 438 N.J. Super. 325, 331 (Ch. Div. 2013) (holding that to show due diligence, a plaintiff must demonstrate a good faith effort to locate a defendant). Due diligence does not require a plaintiff to "take every conceivable action" to find a defendant's whereabouts. *Guardian Life Ins. Co. of Am. v. Crystal Clear Indus.*, Civ. No. 11-3062, 2012 WL 1884003, at *5 (D.N.J. May 22, 2012). Once a plaintiff has exhibited that he exercised reasonable due diligence, "a court may order an alternative means of service that is consistent with due process." *Guardian Life Ins. Co. of Am. v. Estate of Matesic*, Civ. No. 16-643, 2016 WL 3763340, at *2 (D.N.J. Jul. 14, 2016).

The Court finds that Plaintiff has demonstrated due diligence in attempting to serve the SPS Defendants. To wit, Plaintiff's counsel has declared that that Plaintiff's process servers

have attempted to serve the SPS Defendants at its last four known locations: 5502 Island River Drive, Knoxville Tennessee; 7200 Intermodal Drive, Louisville, Kentucky 40258; 108 West 13th Street, Wilmington, Delaware; and 3858 Oakcliff Industrial Court, Whs. #7, Atlanta, Georgia. Declaration of Anne E. Shannon ("Shannon Decl."), D.E. 7-2, at 4-5; Mem. in Supp., D.E. 7-1, at 8.

On December 28, 2022, Process Server Stephen Kempski believed he successfully served the SPS Defendants at the Wilmington, Delaware address because he left the Summons and Complaint with Robin Banks, a purported authorized representative of the SPS Defendants. Shannon Decl., D.E. 7-2, ¶ 12; Ex. H, Affidavit of Process Server Stephen Kempski, D.E. 7-10. However, Plaintiff's counsel learned on December 29, 2022 that the SPS Defendants had permitted its Delaware company registration to lapse. *See* Shannon Decl., D.E. 7-2, ¶ 12; Ex. H, D.E. 7-10, at 3, Letter from BizFilings (explaining it is no longer an authorized agent); *see also id.* at 4, Certification from the Delaware Secretary of State (indicating that Salt Pro Systems LLC was no longer in existence and good standing as of June 1, 2019 due to its failure to pay its annual taxes). This meant that the recipient of service was no longer a registered agent for the SPS Defendants, and thus, service was invalid. *Id.*

On December 29, 2022, a process server attempted to serve the SPS Defendants at the Knoxville, Tennessee address, but was informed by an employee of another company that the SPS Defendants do not exist at that location. Shannon Decl., D.E. 7-2, ¶ 9; Ex. E, Affidavit of Process Server Steven Williams, D.E. 7-7. On that same date, Plaintiff's process server attempted to serve the SPS Defendants at the Atlanta, Georgia location, but that too was unsuccessful because there was no one at the address, the business sign had been removed, the lights inside were off, and a neighbor indicated that the occupants of that location had moved

out.  Shannon Decl., D.E. 7-2, ¶ 11; Ex. G, Affidavit of Process Server Clark Richardson, D.E. 7-9.  Finally, on December 30, 2022, a process server attempted to serve the SPS Defendants at a Louisville, Kentucky location listed on their website as its warehouse location.  That too was unsuccessful as the person at the Kentucky location indicated that the SPS Defendants may have been a previous tenant but were no longer there.  Shannon Decl., D.E. 7-2, ¶¶ 7-8; Ex. D, Affidavit of Process Server Alex May, D.E. 7-6.

After Plaintiff's efforts to effectuate service were unsuccessful, Plaintiff's counsel spent additional time researching further business information for the SPS Defendants.  Plaintiff's counsel discovered that the SPS Defendants had created a "new alias or 'storefront' for its products—namely, 'The Pool Folks' at www.thepoolfolks.com."  Shannon Decl., D.E. 7-2, ¶ 13; Mem. in Supp., D.E. 7-1. at 9-10.  Plaintiff discovered that The Pool Folks's website is nearly identical to the Salt Pool Store's website; the only difference being the name.  Shannon Decl., D.E. 7-2, ¶ 13 ("The addresses, the telephone number, the format and layout of the website are the same."); Mem. in Supp., D.E. 7-1. at 9-10.  Although no further attempts at service have been made on this new alias, the Court finds that they would likely be futile because the same addresses were listed on the new website. Based on Plaintiff's varied and numerous attempts to locate the SPS Defendants and personally serve them, the Court is satisfied that Plaintiff has exercised "reasonable diligence" in its attempts to serve the SPS Defendants.

Although Plaintiff has demonstrated diligence in attempting to identify the SPS Defendants' current whereabouts, the Court's inquiry does not end there because any form of substitute service must be "consistent with due process of law."  N.J. Ct. R. 4:4-4(b)(3); *see also Marlabs Inc. v. Jakher*, Civ. No. 07-4074, 2010 WL 1644041, at *3 (D.N.J. Apr. 22, 2010) (explaining that a proposed means of alternative service must comport with constitutional

6

notions of due process). The United States Supreme Court has explained that the proposed method of service must provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Courts allow "a wide variety of alternative methods of service including . . . email." *Marks L. Offs., LLC v. Mireskandari*, 704 F. App'x 171, 177 (3d Cir. 2017) (quoting *Rio Properties, Inc. v. Rio Intern. Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002)). However, what qualifies as sufficient service depends on each case's particular facts and circumstances. *See Prediction Co. LLC v. Rajgarhia*, Civ. No. 09-7459, 2010 WL 1050307, at *1 (S.D.N.Y. Mar. 22, 2010).

Courts generally permit service by email where "the movant has 'supplied the [c]ourt with some facts indicating that the person to be served would be likely to receive the summons and complaint at the given email address.'" *U.S. Sec. and Exch. Comm'n v. Vuuzle Media Corp.*, Civ. No. 21-1226, 2021 WL 1731947, at *3 (D.N.J. May 3, 2021) (quoting *Morse v. Levine*, Civ. No. 19-6711, 2019 WL 7494619 (S.D.N.Y. Dec. 19, 2019), *report and recommendation adopted*, Civ. No. 19-6711, 2020 WL 85410 (S.D.N.Y. Jan. 3, 2020)). In *Vuuzle Media Corp.*, the court concluded that service via email to defendant Flynn's personal email account would genuinely inform Flynn of the action because the plaintiff submitted recent communications and financial records demonstrating Flynn's usage of the email. *Id.* Moreover, Flynn had represented the email as his own during a press release in or around September 2020. *Id.* Lastly, the Court accepted the SEC's contention that Flynn had knowledge of the suit by way of a press release issued in February 2021. *Id.*

Courts have also recognized email as an adequate means of service where plaintiff shows communication with defendant at the particular email address at which it seeks to serve

7

defendant. *See Celgene Corp. v. Blanche Ltd.*, Civ. No. 16-501, 2017 WL 1282200, at *2 (D.N.J. Mar. 10, 2017) (service on defendant by email comports with due process where emails were not returned as undeliverable); *Myer v. Zhao Tang Kuang*, Civ. No. 19-9385, 2020 WL 525913, at * 2 (D.N.J. Jan. 31, 2020) (granting plaintiff's motion for alternative service where defendant's email address "was in use shortly before the commencement of litigation and the emailing of process was not returned as undeliverable"); *Vaswani, Inc. v. Manjunathamurthy*, Civ. No. 20-20288, 2021 WL 1541071, at *2 (D.N.J. Apr. 19, 2021) (partially denying plaintiff's motion for alternative service where plaintiff failed to provide sufficient proof that the email address actually belonged to defendant or that the defendant "actively uses it").

Here, Plaintiff lists three email addresses that it alleges are associated with the SPS Defendants: sales@saltpoolstore.com, nick@compupool.com.au, and hello@thepoolfolks.com. *See* Mem. in Supp., D.E. 7-1, at 16-17. Plaintiff asserts that service at sales@saltpoolstore.com is likely to provide the SPS Defendants with notice of the action and comport with due process because Defendants were served at that address in the Underlying Salt Pool Store Action. Plaintiff also alleges that through its investigative efforts attempting to find other addresses at which it might serve the SPS Defendants, it discovered that the nick@compupool.com.au and hello@thepoolfolks.com addresses are associated with Defendants. *Id.* Plaintiff also maintains that sales@saltpoolstore.com and hello@thepoolfolks.com are listed, respectively, under the "Get in Touch" sections of the nearly identical Salt Pool Store and The Pool Folks websites. Finally, Plaintiff asserts that because they are Internet-based businesses, these email addresses are reasonably calculated to provide the SPS Defendants on notice of this action. *Id.* Thus, Plaintiff argues that service at these email addresses will comport with due process and will place the SPS Defendants on notice of this action.

8

The Court, however, is not convinced that service via these email addresses on the SPS Defendants would comport with constitutional notions of due process. First, Plaintiff fails to indicate that it has ever communicated with the SPS Defendants using either the nick@compupool.com.au or hello@thepoolfolks.com addresses. For example, Plaintiff does not present any evidence that it has sent any emails, let alone the Summons and Complaint, to these addresses to determine if they are operative or whether their emails would bounce back as undeliverable. Nor has Plaintiff shown that it has received any emails from these addresses. Additionally, while Plaintiff contends that service on sales@saltpoolstore.com will provide the SPS Defendants with notice of this action because emails were previously sent to that address in the Underlying Salt Pool Action, that action concluded over two years ago. There is no reason to believe that the sales@saltpoolstore.com address is still active. This is especially true in a case such as this where Plaintiff avers that Defendants are creating new aliases and storefronts to evade service and enforcement of permanent injunctions against them.

As stated above, courts typically grant alternative service via email only when plaintiff demonstrates that the email address would genuinely apprise defendant of the suit and plaintiff demonstrates some knowledge that defendant actually uses the email address in question. *See, e.g.*, *Vuuzle Media Corp.*, 2021 WL 1731947, at *3; *Vaswani, Inc.*, 2021 WL 1541071, at *2. Plaintiff has made no showing that serving the Summons and Complaint upon these three email addresses would sufficiently apprise the SPS Defendants of the action pending against them and afford them the opportunity to present a defense. *See Mullane*, 339 U.S. at 314. Therefore, this Court denies Plaintiff's motion without prejudice to Plaintiff's right to provide additional evidence to justify this (or another alternative) method of service upon the SPS Defendants.

### b. Service on the Foreign Defendants

Federal Rule of Civil Procedure 4(f) governs service of process upon foreign entities, and Rule 4(f)(1) provides that service is permitted "by an internationally agreed means…reasonably calculated to give notice, such as those authorized by the Hague Convention.…" Fed. R. Civ. P. 4(f)(1). The Hague Convention is an international treaty that governs service of process for foreign defendants. *Celgene Corp., v. Distinct Pharma*, Civ. No. 17-5303, 2018 WL 4251848, at *3-4 (D.N.J. Sept. 6, 2018). The Supreme Court has held that "compliance with the [Hague] Convention is mandatory in all cases to which it applies." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988). The Hague Convention authorizes several different methods for effectuating service abroad, but the primary one requires participating countries to set up a Central Authority for receiving and processing requests for service upon defendants residing within the state. *In re Metformin Mktg. & Sales Prac. Litig.*, Civ. No. 20-2324, 2022 WL 970281, at *5 (D.N.J. Mar. 30, 2022); *see also* Hague Convention, Art. 2-7, 20 UST 361 (1969). Under the Hague, the party seeking to effect service must send out a request for service directly to the Central Authority of the receiving country, which either serves the document directly on defendants or arranges for service by an outside agency. Hague Convention, Art. 2-5. The Central Authority must then complete a certificate detailing how service was effectuated or explaining why service did not occur. *Id.* Art. 6. The completed certificate is then returned to the applicant. *Id.*

Plaintiff concedes that the United States and Australia are signatories to the Hague Convention but asks this Court to authorize service on the Foreign Defendants by alternate means pursuant to Federal Rule of Civil Procedure Rule 4(f)(3). Mem. in Supp., D.E. 7-1, at 20. Rule 4(f)(3) permits service "by other means not prohibited by international agreement, as the

court orders." Fed. R. Civ. P. 4(f)(3). District courts have broad discretion to permit alternative service of process where "(a) there is no international agreement prohibiting service by the proposed method; (b) the proposed method of service is reasonably calculated to provide the defendant notice; and (c) [plaintiff has] made a good faith effort to locate and serve defendants by traditional means." *Vuuzle Media Corp.*, 2021 WL 1731947, at *1. Under the second prong, the proposed method of service "must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Vanderhoef*, 2019 WL 6337908, at *2. The third prong is a flexible approach, requiring the court to consider whether a plaintiff made a good faith effort to locate and attempt service via traditional methods. *Vuuzle Media Corp.*, 2021 WL 1731947, at *2 (quoting *S.E.C. v. One or More Unknown Traders in Sec. of Fortress Inv. Grp., LLC.*, Civ. No. 17-1287, 2018 WL 4676043 (D.N.J. Sept. 29, 2018)). Although Plaintiff need not show that service through the ordinary channels would be futile, "it is helpful to plaintiff's case to show some measure of difficulty in effecting service by usual means." *Bravetti v. Liu*, Civ. No. 12-7492, 2013 WL 6501740, at *3 (D.N.J. Dec. 11, 2013).

Article 10 of the Hague Convention permits service of process through means other than the Central Authority, such as "postal channels," as long as the state of destination does not object to those means of service. Hague Convention, Art. 10. Australia has not objected to service via postal channels or email. *Id.*; *see also Thunder Studios, Inc. v. Kazal*, Civ. No. 17-871, 2017 WL 1044398 (C.D. Cal. May 26, 2017). Regardless, courts have held that service via email is proper even where a signatory to the Hague Convention has objected to service through postal mail. *Vaswani, Inc.*, 2021 WL 1541071, at *4; *FTC v. Pecon Software Ltd.*, Civ. No. 12-7186, 2013 WL 4016272, at *5 (S.D.N.Y. Aug. 7, 2013) (collecting cases). Accordingly, the

11

Court concludes there is no international agreement prohibiting service via email in Australia.

Plaintiff's service via email here may ultimately prove to comport with due process, if, as Plaintiff's counsel represents, the Foreign Defendants advertise their email addresses in connection with their retail websites so as to provide reasonable notice to the Foreign Defendants of this action.[3]  However, Plaintiff has not shown, either through its motion or counsel's Declaration, that it has made even a single attempt to serve the Foreign Defendants through the Hague Convention.  *See RJ Brands, LLC v. Hangdong Trading Ltd.*, Civ. No. 21-4747, 2021 WL 3206813, at *3-4 (D.N.J. Jul. 28, 2021) (denying service via alternative means where the plaintiff failed to show it has made a good faith effort "to locate and serve [the defendant] by traditional means"); *Vanderhoef*, 2019 WL 6337908, at *1 (permitting alternative service of process where the plaintiffs had made numerous attempts to serve defendants in China, including attempting to serve the defendants personally, hiring an investigator to research addresses, and actually attempting to comply with the procedures set forth by the Hague Convention).

Despite having detailed its efforts to serve the SPS Defendants in the United States, Plaintiff wholly fails to explain what efforts it has taken from the date the Complaint was filed on December 16, 2022 to date to serve process on the Foreign Defendants consistent with the Hague Convention.  Instead, Plaintiff asserts that service through the Hague Convention is "lengthy and costly."  *See* Mem. in Supp., D.E. 7-1, at 21.  But, Plaintiff fails to show any "unnecessary delay" that may result from serving the Foreign Defendants through the Hague

---

[3]  For the same reasons expressed above regarding service on the SPS Defendants, the Court finds that Plaintiff has failed to demonstrate that the Foreign Defendants will receive actual notice of this action via the email addresses at which it proposes to serve them.  Again, Plaintiff has not shown that the proposed email addresses are active or that emails to those addresses will not be returned as undeliverable.  Nonetheless, because that seems a hurdle Plaintiff may be able to overcome, the Court turns to a discussion of whether Plaintiff has attempted to serve the Foreign Defendants via traditional means.

Convention. *Id.* While Plaintiff need not show that service through ordinary channels would be futile, *Vuuzle Media Corp.*, 2021 WL 1731947, at *2, it is reasonable to require Plaintiff to attempt to comport with the Hague Convention, without prejudice to its right to renew the within application and establish with reliable evidence that service through ordinary means would be difficult or futile. *Bravetti*, 2013 WL 6501740, at *3. In the alternative, Plaintiff can provide the Court with further substantiation that service through the Hague will be unduly lengthy and costly.

### IV.     CONCLUSION

For the foregoing reasons, Plaintiff's motion for alternative service, D.E. 7, is **denied**. An appropriate Order accompanies this Opinion.

/s *Michael A. Hammer*
Hon. Michael A. Hammer,
United States Magistrate Judge

Dated: May 31, 2023